JOHN L. SPURLOCK, Adm'r, v. NANCY EARLES et al.
and
NANCY EARLES et al. v. JOHN L. SPURLOCK et al.

1. EXECUTORS AND ADMINISTRATORS. *Sureties on bond of, liable for what. Duties of executor. Defendants due from executor to testator before death. Sureties liable for.* Where a creditor dies leaving a will, by which he appoints his debtor his executor, the sureties on the bond of the executor are liable for the debt due from the debtor to his testator, at the suit of the legatees, who are entitled to the fund, if with due and proper diligence the same could have been collected, had it been due from a third party, and the executor required to collect the same.

Case cited: Hughlett v. Hughlett, 5 Hum., 467–473.

Code cited: Secs. 2223–2252.

2. SAME. *Same.* Where a suit is pending for the recovery of a claim, without evidence of fraud or such gross negligence, as might imperil the debt, ordinarily the executor should not be charged with the same.

FROM WARREN.

Appeal from the Chancery Court. A. S. MARKS, Chancellor.

W. E. B. JONES for Spurlock.

JAMES S. BARTON for Earles.

FREEMAN, J., delivered the opinion of the court.

In 1863 Lucy Forest died leaving a will, by which she appointed John L. Spurlock and James Spurlock her executors. John L. seems alone to have taken

upon himself the duties of the trust, qualifying as such in 1865.

The questions to be decided in this case arise on a cross-bill filed by Nancy Earles and others, legatees under the will, seeking an account of said estate from the executor, and to charge him and his securities on his bond for the amount ascertained to be due. It is charged in the bill in general terms that the amount of personal estate with which the executor is chargeable is between eight and ten thousand dollars. The bond is stated to have been substantially in the usual form, with condition to be void if said Spurlock shall faithfully perform his duties as executor. In the answer of Spurlock there is a general denial of the charge that he was chargeable with eight or ten thousand dollars, and then a particular explanation of the items with which he had charged himself in his inventory rendered to the county court, among other things, he says that a portion of the money received by him was received as the attorney of Lucy Forest before her death, and accounted for to her.

The question of the amount with which the executor was chargeable being referred to the master, on the coming in of his report exceptions were filed by the surety, James P. Thompson, which were overruled and a writ of error prosecuted to this court. The question raised by said exceptions are alone before us for revision. The leading question presented is as follows: that several items with which the clerk has charged Spurlock and his sureties were moneys which had been received by Spurlock as the attorney of

Lucy Forest, and such moneys being so in his hands were there at her death, and before his qualification as executor. In other words, the question distinctly presented by the exceptions is, whether, where a creditor dies leaving a will, by which he appoints his debtor his executor, the sureties on the bond of the executor are liable for the debt due from the debtor to his testator at the suit of legatees who are entitled to the fund. This precise question, so far as we are aware, has never been presented in any case in our State, nor have we been pointed to any case in which the question has been decided. We shall endeavor to solve it by the application of general principles that have been settled by adjudication, which bear on the question. By the terms of the bond given in such cases, the executor is bound well and truly to perform all the duties required by law of him as executor, and his sureties are responsible for his failure so to do. Code, sec. 2223. By our law, sec. 2252, "Every debtor's property, except such as may be specially exempt by law, is assets for the payment of debts." This provision has not enlarged the duties or liabilities of executors as such, and these liabilities are still confined, so far as his official bond is concerned, to the faithful administration of the "goods and chattels, rights and credits," which were of his intestate, that is his legal assets and effects, as contradistinguished from equitable assets, such as money arising from the sale of land devised to be sold for the payment of debts, such proceeds are held "not to be testamentary, and the executor not bound to put

them in his inventory." See *Hughlett* v. *Hughlett et al.*, 5 Hum., 467–473, for an eloborate discussion of these questions by Judge Turley. Legal assets are such as come into the hands and power of an executor, or such as he is entrusted with by law, by virtue of his office, to dispose of in the course of his administration; or in other words, whatever an executor or administrator takes *qua* executor or administor, or in respect to his office, is to be considered as legal assets. Williams on Executors, vol. 2, 5th ed., p. 1522. Perhaps it is as accurate a statement as can be made of the doctrine that all assets such as may be reached at law, and such as a creditor suing the executor in action at law for a debt due from the testator, might bring forward in evidence to disprove the executor's plea of *plene administravit*, are legal assets, and included in the duties and liabilities of the executor on his bond, and as a matter of course the sureties are liable to the same extent. 5 Hum., 469; Williams on Executors, same edition, pp. 1519–20.

With these principles settled, we proceed to the question presented, is the debt due to the estate in the hands of the executor, and from him such assets, that if sued for a debt of his intestate, and the plea of *plene administravit* put in by him, the creditor could defeat the plea by showing the existence of such debt due from the executor? Or, as in this case, can the executor or his sureties say, in answer to a legatee seeking an account of the estate, that the collection of this fund was not included in the duties of the

executor as such, and be bound to account for the same as legal assets of his testator or testatrix.

By the common law the appointment by a creditor as his executor extinguished the debt on the principle that the executor could not sue himself, and his appointment to the office suspends the action for the debt, and where a personal action is once suspended by the voluntary act of the party entitled to it, it is forever gone and discharged. Williams on Executors, 1179. This rule, based on reasons entirely technical, was, as is usual in such cases, pushed to its fullest logical extent by the early common law judges of England, so that it was held that when one only of several executors was indebted, the like result followed, as all must join in the suit for the recovery while these principles are settled. Williams on Executors says, "It must be observed that as between the debtor executor and the creditors of the testator, this doctrine is only applicable where there are sufficient assets to satisfy the testator's debts, for it would be unfair to defraud the creditors of their just debts by a release which is absolutely voluntary, and therefore the debt due from the executor shall be considered on their behalf as assets in his hands, and so it is said that if "H. be bound to J. S. in a bond of $100, and then J. S. make H. his executor, he has actually received so much money, and is answerable for it; and if he does not administer so much, it is a devastavit." And on p. 1184 he adds, "It should seem now to be clearly settled that the debt is general assets, not only for the payment of debts, but

also of his legacies; that the appointment of the debtor executor is no more than a parting with the action, and that it shall not operate as a release as against legatees." It is further laid down on the authority of *Simmons* v. *Guttridge*, 13 Vesey, 262, that on a bill by legatees for an account under the usual decree, there ought to be an interrogatory whether he is indebted to the testator, the debt from him being assets. See also *Tomlin* v. *Tomlin*, 1 Hall, 247. These authorities seem conclusive on the general proposition that such debts are assets for all purposes that other debts due the testator are assets; but we think this debt stands as any other debt, however, so far as the sureties on the bond are concerned, and that they do not, by becoming sureties on the bond, guarantee the solvency of the debtor, nor the fact that his debt shall be paid whether he be able to pay it or not. The English cases seem to go on the idea it is true, that the debt is to be treated as so much money immediately in the hands of the executor, yet we think it will be found that the solvency of the debtor in these cases was not questioned. After consideration of the question we think the soundest rule we can adopt on this subject is, that the sureties shall be held responsible for this debt to the same extent and on the same principle as for other debts due the estate; that is, to the extent that with due and proper diligence the same could have been collected if it had been due from a third party, and the executor had been required to collect the same. If in such case the executor, had he been a third

party, could, by proper diligence, have collected the amount claimed to be due by due course of law, then the sureties are responsible for the same, and if only a portion of it could have been collected, then to the extent the debt was collected by law, if such third party had been executor, they shall be charged. This inquiry will be made on remanding the case, and a decree entered accordingly as the result of such reference shall show. The proof now in the record, and such other as the parties may present, may be looked to on this inquiry. We do not think the proof very satisfactory or clear on this question in the record.

It has been argued with considerable plausibility that Spurlock had paid the amount received by him on the debts in his hands for collection as an attorney to Lucy Forest. This is based on the fact that the money was collected some time before the death of Lucy Forest, and that a balance on the same debt had been collected by another attorney and paid over to her. In addition, it is said Lucy Forest was a shrewd, practical business woman, and made Spurlock her executor, and also trustee for one of her favorite legatees, and that in the will itself is found persuasive evidence of the fact that nothing remained in his hands, because in the residuary clause it is said, "after the foregoing bequests (which are specifically found in the will) are satisfied, if there be anything remaining, I want it equally divided, etc. We have endeavored fairly to weigh all this in connection with the facts of the case, but are unable to concur in the conclusion stated.

We have the fact that Spurlock's receipt for the collection of the debt stands against him, and the additional fact that he had received the money, or a a part of it. He must, then, discharge himself by clear and satisfactory evidence, which we think is not done by the above facts and circumstances. On the contrary, the confidence and trust reposed in him by the testatrix might be pretty strong evidence of the fact that she had been willing to let this fund remain in his hands, believing it to be safe. Another exception is as to the charge against respondents of the amount of what is known as the Jennings debt. On this debt it seems suit was brought by Spurlock, but the same not collected at the time of the decree made, but has probably been disposed of since, while it would appear that the suit has not probably been prosecuted with as much diligence as it ought to have been, yet we cannot say that, with a suit pending for the recovery of the claim, without evidence of fraud or such gross neglect as might imperil the debt, the executor should be charged with the same. It is stated the same has been settled, perhaps, by purchasing interests of legatees, and thus discharging the judgment. If this turn out to be true, then the sureties will not be chargeable with the amount, as the same has been appointed to the satisfaction of the interest of the parties entitled. How this is we do not inquire at present, as we have no evidence in this record on the subject. There is a decree handed in in another case tending to show these facts, but it is no part of this record. On remanding the case

Spurlock *v.* Earles.

an inquiry will be made whether any of this debt was collected by Spurlock, or whether any of it is lost, or has been lost by his negligence. If so, in either case he will be chargeable. If, however, any or all of it has been applied to the satisfaction of the interest of legatees to the extent the same has been done, the defendants will be credited with such sums. On final decree, as a matter of course, any amount realized by the sale of Thompson's land will be credited on any balance found due against him.

Several other questions were presented in argument, but as they were not presented by exceptions to the report of the master, and are purely matter of exception to such report, we cannot look at them.

The decree will be reversed or modified in the matter indicated, and the case remanded for reference and inquiry as to the matters indicated in this opinion. Cost of this court will be paid by complainants in the cross-bill, and on final hearing the chancellor will adjudge the balance of the costs which may accrue.